# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EARL BRADLEY, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 18-174-LPS |
| | : | |
| WARDEN, Cheshire Correctional Inst., | : | |
| Cheshire, CT, and ATTORNEY GENERAL | : | |
| OF THE STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

_____

Earl Bradley. *Pro Se* Petitioner.

Carolyn S. Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____

## MEMORANDUM OPINION

November 12, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Earl Bradley ("Petitioner"). (D.I. 1)  The State has filed an Answer in Opposition.  (D.I. 18)  For a multitude of reasons, the Court will deny the Petition.  As explained in detail below, the Fourth Amendment claims are not legally cognizable on federal habeas review, all of the Petition's Claims are time-barred, and (in the alternative) the many ineffective assistance of counsel claims lack merit.

## II.   BACKGROUND

The facts leading up to Petitioner's arrest and convictions, as summarized by the Delaware Supreme Court in Petitioner's direct appeal, are as follows:

> In December 2009, a mother informed a retired Delaware State Police detective of her young daughter's statement that [Petitioner], the child's pediatrician, had touched her vaginal area in the basement of his office during a routine medical visit.  The retired detective informed Detective Thomas Elliott, who sat in on an interview of the child by the Child Advocacy Center.  During the interview, the child repeated that [Petitioner] had touched her in that manner.
>
> The Delaware State Police had received prior complaints in 2008 concerning [Petitioner].  Detective Elliott and another officer had sought a search warrant to search BayBees Pediatrics for evidence of child pornography, but that application was denied.  One of the 2008 complaints involved a twelve-year-old female who visited Petitioner regarding a sore throat and possible pink eye.  [Petitioner] conducted a full vaginal examination on her for several minutes.  When the girl left, she started crying and told her mother that she felt dirty about the incident.  Another case involved a six-year-old girl who visited Petitioner for Attention Deficit Disorder.  [Petitioner] had the child take her clothes off, and attempted to perform a vaginal examination on her.  Finally, a seven-year-old girl visited [Petitioner] for excessive urination.  He performed two vaginal examinations on her, with the girl draped so that her mother could not see what was occurring.  Detective Elliott also learned of a 2005 investigation into [Petitioner's] conduct by the Milford Police Department.

Based on the prior complaints against [Petitioner], the December 2009 complaint, and additional investigation, police applied for a new search warrant from the Superior Court. This December 15, 2009 search warrant application stated, in relevant part:

ITEMS TO BE SEARCHED FOR AND SEIZED:

1. Files to include medical files relating to the treatment and care of listed children, to include paper files, as well as computer files in regard to Child 1, 2, 3, 4, 5, 6, 7, and 8 and any other alleged Victims that come forward from the time the search warrant is signed, until it is executed.

2. Video and photographs of the below listed location.

SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE(S) AND / OR VEHICLE(S) AND / OR PERSON(S) TO BE SEARCHED:

A two story residence style building, white in color, located at 18259 Coastal Highway, Lewes, DE. 19958. There is a yellow Volk[s]wagon, with BayBees Pediatrics displayed on the car. There are signs at the front of the building that display "BayBees Pediatrics["] and "[Petitioner]" on the signs.

NAME OF OWNER(S), OCCUPANT(S) OR POSSESSOR(S) OF PREMISES AND/OR PLACE(S) AND/OR VEHICLE(S) AND/OR PERSON(S) TO BE SEARCHED:

Earl B. Petitioner (DOB – 05/10/53), a white male. BayBees Pediatrics, 18259 Coastal Highway, to include a white outbuilding, located on the property.

In the supporting affidavit of probable cause, Detective Elliott described reports of inappropriate touching and examinations of eight girls between the ages of approximately three years old and twelve years old. The reports included statements that [Petitioner] kissed patients on the mouth, touched their vaginal areas without apparent medical reason, or carried them around the office excessively. The affidavit also included accounts from former colleagues of [Petitioner] that patients had transferred from [Petitioner] to them because [Petitioner] conducted inappropriate

2

vaginal examinations, separated children from their parents for long periods of time, or forced children to undress.

The affidavit also recounted a statement from a former employee that [Petitioner] had installed surveillance cameras throughout his current office, and that [Petitioner] could access those cameras from his home. According to a former colleague, [Petitioner] took digital pictures of patients and manipulated the pictures on his computer.

In describing the patient complaints, the affidavit referred to the main building and to an "outbuilding" behind [Petitioner's] office:

> During an interview with the father of the child he advised when he was at the office on 10/28/09, he observed [Petitioner] carrying a patient to an outbuilding located behind the office.

Detective Elliott represented that he had corroborated the address of BayBees Pediatrics, and the existence of an outbuilding on the property. The affidavit stated:

> The office also has an outbuilding, which affiant has learned is utilized by [Petitioner]. [Petitioner] takes his patients into the outbuilding as well as the basement of his office.

\* \* \*

> Your Affiant has shown that there is information that [Petitioner] has installed video recording devices throughout his office which not only are accessible by [Petitioner] at his office but that [Petitioner] has also configured the material recorded to be accessed at his home with the use of his home computer. Your Affiant has also shown information that [Petitioner] uses his personal computer in the Doctor's office and at home, takes digital photographs of patients and manipulates them on the computer. . . . Your affiant believes that evidence may be found on [Petitioner's] computers and/or digital recording equipment that will be able to corroborate statements made by witnesses, help in identification of other victim[s] in the search warrant. Your affiant also has knowledge that doctors use computers to store patient records and details of patients['] visits to the doctor.

3

Finally, in its request to search and seize computers electronic storage devices, the affidavit stated: "[a] suspect may try to conceal criminal evidence, he or she might store it in random order with deceptive file names. This may require searching authorities to examine all stored data to determine which particular files are evidence or instrumentalities of crime.

Police executed the search warrant on the morning of December 16, 2009. When the police arrived at BayBees Pediatrics, they discovered that the property contained four buildings, not two as previously believed. The four buildings consisted of: a main building for the medical practice ("Building A"); a white outbuilding ("Building B"); a white garage ("Building C") and a tan shed ("Building D"). Detective Elliott later testified at the suppression hearing that, in preparing the search warrant application, he had driven by on Route 1 and had only observed Building A and a "large white building towards the rear of the property," later determined to be Building B.

When Detective Elliott and his superiors observed the additional buildings on the day of the search, they called a Deputy Attorney General and asked for assistance. The Deputy Attorney General told them that she was on her way to the scene. By the time she arrived, however, the search was already under way. The police had concluded, without awaiting further advice from the Deputy Attorney General, that the warrant applied to all the buildings on the BayBees Pediatrics property.

Police officers entered Building A and found a video camera on the exam table of the first patient examination room on the right as they entered. The police also found and collected a digital camera from the office area behind the reception room. That camera was sitting on top of paper files. A video camera was also collected from a shelf in the basement of Building A. Police turned the cameras over to the High Tech Crime Unit for analysis without inspecting any data on them. Police recovered paper files for seven of the eight victims listed in the search warrant from Building A, except for the victim who had been linked to the 2005 investigation by Milford police.

Police officers also entered Building B, which contained an office area with a desk and shelving. They recovered numerous digital recording and storage devices from this building, including: five thumb drives from the top of the door frame; two digital hand-held recorders from the shelving and floor by the desk; six other thumb drives and three larger forms of removable media from the desk area; a 2G SanDisk card from a white envelope on a shelving unit; a SanDisk Cruiser thumb drive and Sony Handycam from the dresser;

a Sony Net Share camera by the doors; a DVD; and two pen cameras, approximately four to five inches long. Police officers also found a Dell Dimension computer sitting on the desk, with a HP 4G thumb drive in the USB port. They recovered that thumb drive as well as a Sony HD webcam located next to the computer.

Police officers did not seize any evidence from Building C. Police officers entered Building D, the tan shed, and seized a total of thirty-four memory cards, a DVD, a thumb drive, and a desktop computer.

On December 17, 2009, Detective James Spillan began analyzing the digital evidence seized during the search. He first examined the 4G thumb drive that was connected to the Dell computer on Petitioner's desk in Building B. The thumb drive contained seven deleted files. The first file that Detective Spillan encountered indicated a date of September 30, 2009 and had a mpg extension, typically indicating a video file. He opened the file and saw a video of [Petitioner] in Building B with a female child approximately three years old. The child appeared upset or in distress, and was crying for her mother. The video showed [Petitioner] pointing the child toward the camera and reaching to remove the child's diaper. At this point, Detective Spillan stopped watching the video, removed the thumb drive from his computer, and reapplied for a new search warrant. He did not review any other material seized. Based on his training, he believed that the video was evidence of sexual exploitation or child pornography. In the new search warrant application, Detective Spillan requested permission to search all of the digital media retrieved the prior day for evidence of these additional crimes. The Superior Court approved the subsequent search warrant application, and the police executed those warrants.

[Petitioner] was arrested the same day that the initial search warrant was executed. He was later indicted on multiple counts of Rape in the First Degree, Assault in the Second Degree, and Sexual Exploitation of a Child, along with other charges. Petitioner moved to suppress evidence seized pursuant to the searches conducted on December 16 and December 17. After a two-day evidentiary hearing and briefing by the parties, the Superior Court denied the motion in a forty-three-page written opinion.

Thereafter, [Petitioner] waived his right to a jury trial, and the parties proceeded to a bench trial based on an amended superseding indictment. The State presented videotape evidence of the sexual offenses. The average age of the victims was only three years old. Some of the videos depicted [Petitioner] carrying young children down to the basement below Building A. He would pull the girl's

> underwear down and film her vagina or buttocks. The videos depicted him fondling or kissing girls, and occasionally depicted him attempting to perform cunnilingus on them. In other cases, [Petitioner] used a hidden pen camera to film a girl's vagina in the examination room, under a drape, as he performed a vaginal examination. Some of the videos depicted violent, forcible rapes of young children in Building B. These child victims generally were toddler-aged.

*Bradley v. State*, 51 A.3d 423, 428-31 (Del. 2012).

On June 23, 2011, the Delaware Superior Court found Petitioner guilty of all the crimes charged in the amended superseding indictment. (D.I. 18 at 2) On August 26, 2011, the Superior Court sentenced Petitioner to 14 mandatory life sentences and 164 years at Level V imprisonment. (*Id.*) Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentence on September 6, 2012. *See Bradley*, 51 A.3d at 436.

On February 27, 2013, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and the Superior Court appointed counsel to represent Petitioner. (D.I. 18 at 2) Appointed counsel filed an amended Rule 61 motion. After conducting an evidentiary hearing and considering the amended Rule 61 motion, the State's reply, and additional filings, the Superior Court denied Petitioner's Rule 61 motion on June 5, 2015. *See State v. Bradley*, 2015 WL 3551898 (Del. Super. Ct. June 5, 2015). Petitioner appealed, and the Delaware Supreme Court affirmed that judgment on March 3, 2016. *See Bradley v. State*, 135 A.3d 748, 762 (Del. 2016).

Acting *pro se*, Petitioner filed a second Rule 61 motion on March 29, 2016, followed by a third Rule 61 motion on May 11, 2016. (D.I. 18 at 3) The Superior Court consolidated Petitioner's filings and treated them as a second Rule 61 motion. *See State v. Bradley*, 2017 WL 2209896, at *2 (Del. Super. Ct. May 18, 2017). On May 18, 2017, the Superior Court summarily dismissed Petitioner's second Rule 61 motion as successive under Rule 61(d)(2), and also as barred under Rule

6

61(i)(1)-(4). *Id.* at *4. On January 16, 2018, the Delaware Supreme Court affirmed the Superior Court's judgment on post-conviction appeal, "on the basis of, and for the reasons in, the Superior Court's well-reasoned order dated May 18, 2017." *Bradley v. State*, 179 A.3d 275 (Table), 2018 WL 454461, at *1 (Del. Jan. 16, 2018).

Petitioner filed the instant § 2254 Petition in January 2018, asserting the following grounds for relief:

(1) Claim One: State action deprived him of his choice of counsel under the Sixth Amendment to the United States Constitution (D.I. 1 at 5);

(2) Claim Two (A): the police exceeded the scope of the warrant by searching all four buildings on the BayBees Pediatrics property, thereby violating Petitioner's Fourth Amendment rights (D.I. 1 at 7); Claim Two (B): trial counsel provided ineffective assistance by failing to challenge the trial court's consideration of evidence outside of the four corners of the search warrant (D.I. 1 at 7); Claim Two (C): appellate counsel provided ineffective assistance by failing to raise the issue of the trial court's consideration of evidence outside of the four corners of the search warrant on appeal (D.I. 1 at 7); Claim Two (D): the state court "usurped the magistrate's function by vouching for Building B," thereby violating Petitioner's Fourth Amendment rights (D.I. 1 at 7);

(3) Claim Three (A): Petitioner's Fourth Amendment rights were violated because Detective Spillan exceeded his authority when he used his own discretion "and not the warrant language" to search Petitioner's digital files (D.I. 1 at 8-9); Claim Three (B): trial counsel provided ineffective assistance by failing to adequately present a claim regarding the scope of the police search of digital items (D.I. 1 at 8); Claim Three (C): appellate counsel provided ineffective assistance by failing to adequately present a claim regarding the scope of the police search of digital items (D.I. 1 at 8);

7

(4) Claim Four (A): Petitioner's "constitutional right to a reasonable search under the 4th Amendment was violated when [Detective] Spillan executed a general search guided only by his own discretion and not the warrant language" (D.I. 1 at 10); Claim Four (B): Petitioner's Fourth Amendment rights were violated because the warrant language was overly broad (D.I. 1 at 10); Claim Four (C): trial counsel were ineffective in their "acquiescence" to Fourth Amendment violations (D.I. 1 at 10); Claim Four (D): appellate counsel were ineffective in their "acquiescence" to the Fourth Amendment violations (D.I. 1 at 10);

(5) Claim Five (A): Petitioner's Fifth Amendment rights were violated when police "broadened their search to a private computer found in a private location when the warrant targeted only a business computer to be found in a business location" (D.I. 1 at 12); Claim Five (B): trial counsel provided ineffective assistance by failing to raise the Fifth Amendment violation (D.I. 1 at 12); Claim Five(C): appellate counsel provided ineffective assistance by failing to raise the Fifth Amendment violation on appeal (D.I. 1 at 12);

(6) Claim Six (A): Petitioner was denied his Sixth Amendment right to a jury trial (D.I. 1 at 13); Claim Six (B): trial counsel provided ineffective assistance by failing to "assur[e] the [Sixth Amendment] right" to a jury trial (D.I. 1 at 13); Claim Six (C): appellate counsel provided ineffective assistance by failing to "assur[e] the [Sixth Amendment] right" to a jury trial (D.I. 1 at 13);

(7) Claim Seven (A): judicial bias (D.I. 1 at 14); Claim Seven (B): trial counsel provided ineffective assistance by failing to raise the issue of judicial bias (D.I. 1 at 14); Claim Seven (C): appellate counsel provided ineffective assistance by failing to challenge judicial bias (D.I. 1 at 14);

(8) Claim Eight (A): the harmless error analysis of *Chapman v. California*, 386 U.S. 18 (1967) "was not applied to undisputed Fourth Amendment violations" (D.I. 1 at 15); Claim Eight (B): trial counsel provided ineffective assistance by failing to argue that the harmless error standard was

violated (D.I. 1 at 15); Claim Eight (C): appellate counsel provided ineffective assistance by failing to argue on appeal that the harmless error standard was violated (D.I. 1 at 15);

(9) Claim Nine (A): Petitioner was denied his Sixth Amendment right to a speedy trial (D.I. 1 at 16); Claim Nine (B): trial counsel were ineffective "by sacrificing Petitioner's right solely for [his] own convenience with regard to another case" (D.I. 1 at 16);

(10) Claim Ten (A): cumulative error as a result of judicial abuses of discretion (D.I. 1 at 17); Claim Ten (B): the Superior Court "lost jurisdiction" as a result of "extreme irregularities in the proceedings" (D.I. 1 at 17); Claim Ten (C): trial counsel were ineffective in "their complacency" to such irregularities (D.I. 1 at 17); Claim Ten (D): appellate counsel were ineffective in "their complacency" to such irregularities (D.I. 1 at 17);

(11) Claim Eleven (A): Petitioner's Sixth Amendment right to counsel was "constructively denied at critical stages during the trial process" as a result of the Delaware state court's finding that "Mr. Maurer was [Bradley's] family's attorney choice and not [Petitioner's]" (D.I. 1 at 18); Claim Eleven (B): trial counsel were ineffective "in not assuring the fundamental [Sixth Amendment] rights" (D.I. 1 at 18); Claim Eleven (C): appellate counsel were ineffective "in not assuring the fundamental [Sixth Amendment] rights" (D.I. 1 at 18);

(12) Claim Twelve (A): Petitioner's Fourth Amendment rights were violated "when police invaded extra buildings they knew or should have known were not covered by the warrant" (D.I. 1 at 19); Claim Twelve (B): the Superior Court abused its discretion by ignoring "on-point guidance [on the Fourth Amendment issue] from the U.S. Supreme Court" in the decision *Maryland v. Garrison*, 480 U.S. 79 (1987), despite citing such case (D.I. 1 at 19); Claim Twelve (C): trial counsel were ineffective when handling Fourth Amendment issues arising from the police searching buildings they knew or should have known were not covered by the warrant (D.I. 1 at 19); Claim

9

Twelve (D): appellate counsel were ineffective in handling the Fourth Amendment violations (D.I. 1 at 19);

(13) Claim Thirteen (A): Petitioner's Fourth Amendment rights were violated "when police searched buildings beyond the scope of the warrant" (D.I. 1 at 20); Claim Thirteen (B): the state courts abused their discretion by not following principles of *Groh v. Ramirez*, 540 U.S. 551 (2004), and *Doe v. Groody*, 361 F.3d 232 (3d Cir. 2004), when addressing Petitioner's Fourth Amendment claims regarding the outbuilding listing in the "Name" block (D.I. 1 at 20); Claim Thirteen (C) and (D): trial and appellate counsel were ineffective "when they spar[r]ed with the prosecution debating 'white' vs 'checkerboard' building when neither should have been contemplated" (D.I. 1 at 20; D.I. 4 at 1, 4);

(14) Claim Fourteen (A): Petitioner's rights under the Fourth and Fourteenth Amendments were violated by the "use of a defective warrant rooted in staleness and *Franks'* violations as well as affiant deception misrepresenting hearsay witnesses, including one key witness who was never interviewed," and the trial court abused its discretion "when a host of clearly false deceptions and perjury in conflict with the trial record were held as facts" (D.I. 1 at 21); Claim Fourteen (B) and (C): trial and appellate counsel were ineffective "by failing to effectively argue [his Fourth Amendment violations]" (D.I. 1 at 21);

(15) Claim Fifteen (A): ineffective assistance of postconviction counsel (D.I. 1 at 22); Claim Fifteen (B): constructive denial of postconviction counsel (D.I. 1 at 22); Claim Fifteen (C): Petitioner was denied his right to self-representation during the Rule 61 proceedings when the Delaware Supreme Court "ignored" his motion requesting that Chief Justice Strine either recuse or declare "duty to sit" (D.I. 1 at 22); Claim Fifteen (D): Petitioner's "constitutional rights to due process and equal protection under the law in post-conviction proceedings were violated when the trial judge

abused his discretion and materially interfered in the process in an attempt to cause prejudice" (D.I. 1 at 22);

(16) Claim Sixteen (A): Petitioner's constitutional rights were violated because the warrant failed to provide the "required nex[us] in violation of the United States Supreme Court's directives in *Warden v. Hayden*, 387 U.S. 294 (1967) (D.I. 1 at 23); Claim Sixteen (B): Petitioner's constitutional rights were violated because photographic images and video were outside and beyond the warrant's scope (D.I. 1 at 23);

(17) Claim Seventeen (A): Petitioner's Fourth Amendment rights were violated "by a general search" (D.I. 1 at 24); and, finally, Claim Seventeen (B): Petitioner's Fourth Amendment rights were violated when he "was denied a full and fair hearing and adjudication when the courts abused [their] discretion and failed to provide even a minimal colorable application of the correct 4th Amendment constitutional standard resulting in a decision contrary to clearly established federal law as determined by the United States Supreme Court" (D.I. 1 at 24).[1]

The State contends that the Petition should be dismissed in its entirety as time-barred.  (D.I. 14 at 8-19)  Alternatively, the State contends that:

(1) Claims Two (B) and (C) should be denied as meritless;

(2) the Claims alleging Fourth Amendment violations (Claims Two (A) and (D); Three (A); Four (A) and (B); Eight (A); Twelve (A) and (B); Thirteen (A) and (B); Fourteen (A); Sixteen (A) and (B); Seventeen (A) and (B)) should be dismissed as non-cognizable;

---

[1] The State's summary of the claims to which it is responding runs to four pages (*see* D.I. 18 at 10-13) and identifies 50 separate claims being pressed by Petitioner.

11

(3) the Claims alleging that post-conviction counsel provided ineffective assistance during the first Rule 61 proceeding and that other constitutional violations also occurred during the first Rule 61 proceeding (Claims Fifteen (A), (B), (C), and (D)) should be denied as non-cognizable; and

(4) the remaining Claims (Claim One; Three (B) and (C); Four (C) and (D); Five (A), (B), and (C); Six (A), (B), and (C); Seven (A), (B) and (C); Eight (B); Nine (A) and (B); Ten (A), (B), (C), and (D); Eleven (A), (B), and (C); Twelve (C) and (D); Thirteen (C) and (D); and Fourteen (B) and (C)) should be denied as procedurally barred.

## III.   GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Allegations of error in state collateral proceedings, even when couched in terms of "Due Process," are not cognizable on federal habeas review, because "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state . . . proceeding that actually led to the petitioner's conviction." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's *collateral* proceeding does not enter into the habeas

calculation."). In addition, claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("State courts are the ultimate expositors of state law."); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review).

### B. Limitations Period

The AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Timeliness must be evaluated on a claim-by-claim basis, *see Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) ("28 U.S.C. § 2244(d)(1), like other statute of limitations provisions, must be applied on a claim-by-claim basis."), and AEDPA's limitations period is subject to statutory and equitable tolling, *see* 28 U.S.C. § 2244(d)(2) (statutory tolling); *Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling).

13

### C. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*,

14

501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989). "State rules count as 'adequate' if the they are firmly established and regularly followed." *Johnson v. Lee*, 136 S.Ct. 1802, 1804 (2016).

As a general rule, federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have

15

found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### D. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). If, however, the state's highest court fails to address a claim raised by the petitioner, the federal court must apply a *de novo* standard of review. *See Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) ("AEDPA's deferential standards of review do not apply unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States."); *see also Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017), as amended (July 18, 2017); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005).

## IV.   DISCUSSION

### A.  The Fourth Amendment Claims Are Not Cognizable

In Claims Two (A) and (D), Three (A), Four (A) and (B), Eight (A), Twelve (A) and (B), Thirteen (A) and (B), Fourteen (A), Sixteen (A) and (B), and Seventeen (A) and (B), Petitioner asserts that the police search of his property and seizure of evidence violated his rights under the Fourth Amendment.  Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), Fourth Amendment claims alleging that evidence was obtained in an unconstitutional manner are not cognizable on federal habeas review if the petitioner had a full and fair opportunity to litigate the claims in the state courts.  *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992).  A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism.  *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz,* 631 F.2d 247, 250 (3d Cir. 1980).  Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim – and, therefore, avoids the *Stone* bar – if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument.  *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).  Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."  *Id.*

The instant Claims alleging violations of Petitioner's Fourth Amendment rights are barred by *Stone* and, therefore, fail to present issues cognizable on federal habeas review.

First, the fact that Delaware provides a mechanism to suppress evidence via Delaware Superior Court Criminal Rule 41 satisfies *Stone*'s "full and fair opportunity to litigate" requirement for federal habeas purposes.  *See, e.g., Marshall v. Hendricsk*, 307 F.3d 36, 82 (3d Cir. 2002).

Second, Petitioner availed himself of Delaware's process and filed a pre-trial motion to suppress evidence. The Superior Court denied the Rule 41 motion after conducting a two-day evidentiary hearing. Petitioner then unsuccessfully challenged that decision in his direct appeal to the Delaware Supreme Court and, again, in his Rule 61 proceedings. This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment Claims in the Delaware state courts, and Petitioner's disagreement with the Delaware state courts' decisions rejecting his Fourth Amendment arguments and/or the reasoning utilized in those decisions is insufficient to overcome the *Stone* bar.

Accordingly, the Court will deny Claims Two (A) and (D), Three (A), Four (A) and (B), Eight (A), Twelve (A) and (B), Thirteen (A) and (B), Fourteen (A), Sixteen (A) and (B), and Seventeen (A) and (B) because they fail to provide a proper basis for federal habeas relief.

### B. The Petition is Time-Barred

The instant § 2254 Petition, filed in 2018, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). Given these circumstances, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final 90 days after the state appellate court's decision. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999); *Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999). Since Petitioner did not file a petition for writ of certiorari, his judgment of conviction became final on December 5, 2012, 90 days after the Delaware Supreme Court affirmed Petitioner's conviction. Applying the one-year limitations period to that date,

18

Petitioner had until December 5, 2013 to timely file his Petition. *See Wilson v. Beard,* 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson,* 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method; i.e., the limitations period expires on anniversary of triggering event).

Petitioner filed the instant Petition on January 25, 2018,[2] five years after the expiration of the limitations period. Thus, his Petition is untimely, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158.

### 1. Statutory tolling

Pursuant to § 2244(d)(2), a properly-filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers,* 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor,* 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). The limitations period, however, is not tolled during the 90 days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia,* 247 F.3d 539, 542 (3d Cir. 2001). In addition, a post-conviction motion that is untimely under state law is not properly filed for § 2244(d)(2) purposes and, therefore, has no statutory tolling effect. *See Pace v. DiGuglielmo,* 544 U.S. 408, 414 (2005).

Here, 82 days of the AEDPA's limitations period expired before Petitioner filed his first Rule 61 motion on February 27, 2013. The Superior Court denied the motion, and the Delaware

---

[2] Pursuant to the prison mailbox rule, the Court adopts January 25, 2018 as the date of filing because that is the date of Petitioner's signature on the Petition. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir. 2003).

Supreme Court affirmed that decision on March 3, 2016. Consequently, Petitioner's first Rule 61 motion tolled the limitations period from February 27, 2013 through March 3, 2016.

Petitioner filed a second Rule 61 motion on March 9, 2016 (D.I. 16-2 at 10), which the Superior Court summarily dismissed as successive under Rule 61 (d)(2). The Superior Court alternatively dismissed the second Rule 61 motion for "fail[ing] to satisfy the procedural requirements set forth in Rule 61(i)(1)-(4)." *Bradley*, 2017 WL 2209896, at *4. The Superior Court explained that this motion was "untimely and raises grounds for relief that were either not asserted at [Petitioner's] trial, on direct appeal, or in his initial postconviction motion, or, alternatively, that were already adjudicated in connection with those proceedings." *Id.* The Delaware Supreme Court affirmed that decision. Since the Delaware state courts expressly rejected the second Rule 61 motion as time-barred, it was not properly filed for § 2254(d)(2) purposes and, therefore, does not statutorily toll the limitations period.[3] *See Pace*, 544 U.S. at 416 ("When a postconviction motion is

---

[3] The State asserts that a Rule 61 motion summarily dismissed as successive under Rule 61(d)(2) is not "properly filed" for § 2254(d)(2) purposes and, therefore, does not trigger statutory tolling. (D.I. 18 at 16-18)  The Third Circuit has refrained from deciding if a post-conviction motion denied by a state court on the sole ground that the motion was successive can trigger statutory tolling under § 2244(d)(2). *See, e.g., Wessel v. Warren*, 2017 WL 4861618, at *4 (D.N.J. Oct. 27, 2017) (noting that Third Circuit has not previously ruled on this issue). Other jurisdictions have explicitly held that a post-conviction motion dismissed by a state court for being successive (even if timely filed under state law) does not trigger statutory tolling under § 2244(d)(2) because it was not properly filed for § 2244(d)(2) purposes. *See Ham v. Williams*, 2019 WL 4005679, at *8 (D.S.C. July 23, 2019); *Williams v. Birkett*, 670 F. 3d 729, 733 (6th Cir. 2012) (holding that habeas petitioner's second or successive motion for relief from judgment that is rejected by the state courts pursuant to M.C.R. 6.502(G) does not qualify as properly-filed application for post-conviction relief that tolls the limitations period pursuant to 28 U.S.C. § 2244(d)(2)); *Martinez v. Jones*, 556 F.3d 637, 639 (7th Cir. 2009) (holding that second or successive Illinois post-conviction petition proceeding does not toll federal statute of limitations under 28 U.S.C. § 2244(d)(2), unless prisoner is given leave to file petition by Illinois courts).

In this case, the Court will not address whether the Delaware state courts' alternative dismissal of Petitioner's second Rule 61 motion as successive under Rule 61(d)(2) triggers statutory tolling under § 2244(d)(2).  The fact that the Delaware state courts also expressly dismissed the second Rule 61

untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).").  Given these

circumstances, the limitations clock started to run again on March 4, 2016 – the day after the

Delaware Supreme Court affirmed the Superior Court's dismissal of Petitioner's first Rule 61 motion

– and ran the remaining 283 days of the limitations period without interruption until the limitations

period expired on December 12, 2016.  Thus, even with the applicable statutory tolling, all of the

Claims in the Petition are time-barred, unless equitable tolling is warranted.

### 2.  Equitable Tolling

The AEDPA's limitations period may be tolled for equitable reasons in appropriate cases.

*See Holland*, 560 U.S. at 645.  A petitioner can qualify for equitable tolling only by demonstrating "(1)

that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his

way and prevented timely filing." *Holland*, 560 U.S. at 648.  Mere excusable neglect is insufficient.

*See Schlueter v. Varner*, 384 F.3d 69, 77 (3d Cir. 2004).  Consistent with these principles, the Third

Circuit has limited the equitable tolling of AEDPA's limitations period to the following

circumstances:

> (1) where the defendant (or the court) actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from
> asserting his rights; or

---

motion as time-barred under Rule 61(i)(1) provides a sufficient basis for the Court to conclude that
the second Rule 61 motion was not "properly filed" and, therefore, does not statutorily toll the
limitations period. *See, e.g., Johnson v. Pinchak*, 392 F.3d 551, 558 (3d Cir. 2004) ("The fact that both
the New Jersey trial court and Appellate Division made reference to the merits of the case as an
alternative holding does not prevent us from finding procedural default," since "both the Appellate
Division and the trial court explicitly invoked the procedural bar under N.J.R. 3:22-12, which was an
independent basis for the Appellate Division to deny Johnson relief."); *Bennett v. Mueller*, 322 F.3d
573, 580 (9th Cir. 2003) (concluding that procedural bar still applies even if state court based its
denial on alternative grounds, as long as at least one of them was an adequate and independent
procedural ground).

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum.

*Jones*, 195 F.3d at 159; *see also Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del. Nov. 28, 2001).

Petitioner contends that the limitations period should be equitably tolled because it took the Delaware state courts more than one full year to dismiss his second Rule 61 motion as procedurally barred which, in turn, caused him to file the instant Petition in an untimely manner. (D.I. 20 at 5; *see also Pace*, 544 U.S. at 418 ("We now turn to petitioner's argument that he is entitled to equitable tolling for the time during which his untimely PCRA petition was pending in the state courts."). More specifically, he asserts:

> [H]ad the [Superior] Court processed the believed to be procedurally defaulted claim in a timely manner, [Petitioner] could have filed the habeas well within the prescribed time frame. Instead, the [Superior] Court refused to act until over a year later when threatened with a mandamus from the State Supreme Court. [Petitioner] conscientiously filed all petitions in a timely manner and cannot be held responsible for the court's attempt to, by delay, thwart federal redress.

(D.I. 20 at 4-5)

Petitioner's argument concerning the Delaware state courts' delay in adjudicating his second Rule 61 motion appears to be premised on a belief that he had to exhaust state remedies before filing the instant habeas Petition, and that such exhaustion would not be complete until the Delaware state courts ruled on his second Rule 61 motion containing ineffective assistance of trial and appellate counsel claims that were not included in his first Rule 61 motion.[4]  The Supreme Court

---

[4] The Court's understanding of Petitioner's argument is supported by the following statement in post-conviction counsel's letter to Petitioner: "In your recent correspondence, you expressed concern about being able to raise claims in federal court.  You wanted to make sure that your state remedies were exhausted on all of your claims so that you could pursue them in federal court."  (D.I. 16-45 at 30)

rejected a similar argument in *Pace*, 544 U.S. at 416,[5] explaining that a "prisoner seeking state postconviction relief might avoid this predicament [concerning exhaustion], however, by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." The fact that Petitioner was attempting to pursue collateral relief in state court during the 283 days remaining in the AEDPA's limitations period does not explain or excuse his failure to file in this Court a protective § 2254 petition during that 283-day period. Consequently, the fact that the AEDPA's limitations period expired before the Delaware state courts adjudicated his second Rule 61 motion does not provide a meritorious reason for equitably tolling the limitations period.

To the extent Petitioner's untimely filing of the Petition was due to his own ignorance of the law or the result of his miscalculation regarding the one-year filing period, such factors do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). Additionally, to the extent Petitioner's citation to *Martinez v. Ryan*, 566 U.S. 1 (2012), should be construed as an argument for equitable tolling (D.I. 4 at 3; D.I. 20 at 5), this, too, is unavailing. Petitioner appears to assert that the Court should equitably toll the limitations period because post-conviction counsel informed Petitioner that, if the first Rule 61 motion was denied, Petitioner could file a second Rule 61 motion alleging that post-conviction counsel were ineffective when pursuing Petitioner's ineffective assistance of trial counsel claims, so long as the second Rule 61 motion was filed within one year of the first Rule 61 motion's denial. (D.I. 16-45 at 27-30) (The Court discusses this particular argument in more depth in a subsequent section of this Opinion.)

---

[5] The prisoner in *Pace* argued that a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,' and thus that his federal habeas petition is time barred." *Pace*, 544 U.S. at 416.

The rule created by *Martinez* – excusing a petitioner's procedural default of ineffective assistance of trial counsel claims in limited circumstances – does not provide a basis for equitably tolling AEDPA's limitations period.[6]  *See Bland v. Sup't Greene SCI*, 2017 WL 3897066, at *1 (3d Cir. Jan. 5, 2017) ("Though *Martinez* permits a procedurally defaulted claim of ineffective assistance of counsel to be raised where the default was caused by the ineffective assistance of post-conviction counsel, *Martinez* has nothing to with the governing statute of limitations and cannot excuse a failure to file within the limitations period.").

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented.  Accordingly, the Court will deny all of the Claims in the Petition as time-barred.[7]

---

[6] In *Martinez*, 566 U.S. at 16-17, the Supreme Court held for the first time that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel.  In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced.  *See id.* at 9-10, 16-17.  A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability.  *See* 566 U.S. at 13-14.  Significantly, however, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings."  *Id.* at 16.  The Supreme Court explained that "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding."  *Id.* at 11.

[7] Petitioner's Fourth Amendment Claims – Claims Two (A) and (D), Three (A), Four (A) and (B), Eight (A), Twelve (A) and (B), Thirteen (A) and (B), Fourteen (A), Sixteen (A) and (B), Seventeen (A) and (B) – and Petitioner's Claims challenging his Rule 61 proceedings – Claims Fifteen (A), (B), (C), and (D) – are both non-cognizable (*see supra* Section IV.A and *infra* Section IV.D) and time-barred.

### C. Alternatively, The Ineffective Assistance of Counsel Claims Presented in Petitioner's Second Rule 61 Proceeding Are Meritless

In February 2013, acting *pro se*, Petitioner filed his first Rule 61 motion.  In June 2013, the Superior Court appointed counsel to represent Petitioner.  (D.I. 16-2 at 6-7)  In January 2014, post-conviction counsel filed an amended Rule 61 motion including some, but not all, of the ineffective assistance of counsel claims Petitioner had presented in his initial *pro se* Rule 61 motion.  (D.I. 16-2 at 7-8)  In January 2014 – prior to filing the amended Rule 61 motion – post-conviction counsel explained to Petitioner that, pursuant to the rule established in *Guy v. State*, 82 A.3d 710, 715 (Del. 2013), Petitioner had one year in which to file a second Rule 61 motion alleging that post-conviction counsel were ineffective for failing to present all of Petitioner's original *pro se* claims in his first Rule 61 motion.  (D.I. 16-45 at 27)  Specifically, post-conviction counsel informed Petitioner:

> If your motion for postconviction relief is denied, you will have the opportunity to allege ineffective assistance of counsel against me (see the *Guy v. State* case which I sent you in previous correspondence). At that point, you could raise any claims that you believe should be brought to the court's attention.

(D.I. 16-45 at 30)  Postconviction counsel also informed Petitioner that, alternatively, he could proceed *pro se* in order to present all the claims Petitioner had wanted to include in his first Rule 61 motion.  (D.I. 16-45 at 27-28)  Petitioner proceeded with post-conviction counsel, who filed an amended first Rule 61 motion presenting some, but not all, of the claims Petitioner had initially raised when he was proceeding *pro se*.

In June 2014, while Petitioner's first Rule 61 proceeding was still pending, the Superior Court substantively amended Delaware Superior Court Criminal Rule 61 to, *inter alia*, add subsection (d)(2).  Pursuant to Rule 61(d)(2), a second or subsequent Rule 61 motion must be summarily dismissed unless the movant was convicted after a trial and the motion either: (i) asserts that new evidence exists that creates a strong inference that the movant is factually innocent; or (ii) asserts a

25

new, retroactive rule of constitutional law that render the movant's conviction or death sentence invalid.

The Superior Court denied Petitioner's first Rule 61 motion on June 5, 2015, and the Delaware Supreme Court affirmed that judgment on March 3, 2016. Petitioner expeditiously filed a second *pro se* Rule 61 motion on March 9, 2016, asserting numerous ineffective assistance of counsel claims that were not presented in his first Rule 61 proceeding. On May 18, 2017, the Superior Court summarily dismissed the second Rule 61 motion as successive under Rule 61(d)(2), and also dismissed the second Rule 61 motion as otherwise barred under Rule 61(i)(1)-(4). *See Bradley*, 2017 WL 2209896, at *4. Petitioner appealed that decision. On July 31, 2017, while Petitioner's second post-conviction appeal was still pending, the Delaware Supreme Court held that the rule set forth in *Guy v. State* does not apply to successive Rule 61 motions filed after the June 2014 addition of subsection (d)(2). *See Coles v. State*, 169 A.3d 858 (Table), 2017 WL 3259697, at *2 (Del. July 31, 2017). The Delaware Supreme Court affirmed the Superior Court's dismissal of Petitioner's second Rule 61 motion on January 16, 2018, explicitly holding that "[c]ontrary to [Petitioner's] contentions, his ineffective assistance of postconviction counsel claims were subject to the requirements of Superior Court Criminal Rule 61(d)(2)." *Bradley*, 2018 WL 454461, at *1.

The Court has already explained why *Martinez v. Ryan* cannot be used to equitably toll the limitations period despite Petitioner's assertion that he detrimentally relied on post-conviction counsel's legal advice that he would be able to present the claims excluded from his first Rule 61 motion in a second Rule 61 motion. (*See supra* at Section IV.B.2) In addition, however, and to the extent the claim alleging ineffective assistance of post-conviction counsel can be made at all, post-conviction counsel's statement regarding Petitioner's ability to allege ineffective assistance of counsel claims in a second Rule 61 motion did not amount to ineffective assistance – because it was a

26

correct statement of law at the time it was provided. Notably, the Delaware Supreme Court had not yet addressed the interplay between *Guy v. State* and Rule 61(d)(2) when post-conviction counsel informed Petitioner that the rule announced in *Guy v. State* permitted him to present the claims that were excluded from his first Rule 61 motion in a second Rule 61 motion. It was not until July 2017 – long after the Delaware state courts denied Petitioner's first Rule 61 motion – that the Delaware Supreme Court held *Guy v. State* was inapplicable to second Rule 61 motions filed after the 2014 addition of Rule 61(d)(2).

The fact that Rule 61(d)(2) was added after Petitioner decided to proceed with only some of his original ineffective assistance of counsel claims in the counselled, amended first Rule 61 motion, combined with the fact that the Delaware Supreme Court did not address the effect of Rule 61(d)(2) on successive Rule 61 motions until after the Superior Court had already denied Petitioner's second Rule 61 motion, presents an unusual (perhaps unique) set of circumstances. Although the State contends that the 21 ineffective assistance of counsel Claims Petitioner presented in his second Rule 61 proceeding should be denied as procedurally barred under Rule 61(d)(2), the Court concludes that the better exercise of its discretion is to reach the merits of those ineffective assistance of counsel Claims. The AEDPA's limitations period is not jurisdictional. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). Indeed, 28 U.S.C. § 2254(b)(2) provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See also Rhines v. Weber*, 544 U. S. 269, 277 (2005).

Consequently, in the interest of judicial economy, and because (given the Court's conclusions) it will not alter the outcome (as the Petition would be denied in whole regardless of whatever decision the Court might reach on the equitable tolling issue in the convoluted circumstances presented here), the Court will exercise its discretion and review the merits of the

27

following 21 ineffective assistance of trial and appellate counsel Claims: Four (C) and (D); Five (B)

and (C); Six (B) and (C); Seven (B) and (C); Eight (B) and (C); Nine (B); Ten (C) and (D); Eleven (B)

and (C); Twelve (C) and (D); Thirteen (C) and (D); and Fourteen (B) and (C).[8]

The Supreme Court precedent governing ineffective assistance of counsel claims is the two-

pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See*

*Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate

that "counsel's representation fell below an objective standard of reasonableness," with

reasonableness being judged under professional norms prevailing at the time counsel rendered

assistance. 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly

demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance." *Id.* at 689. Under the second *Strickland* prong, a petitioner must

demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a

"probability sufficient to undermine confidence in the outcome." *Id.* In order to sustain an

ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual

---

[8] As Justice Alito has explained:

> In the absence of any legal obligation to consider a preliminary
> nonmerits issue, a court may choose in some circumstances to bypass
> the preliminary issue and rest its decision on the merits. *See, e.g.,* 28
> U.S.C. § 2254(b)(2) (federal habeas court may reject claim on merits
> without reaching question of exhaustion). Among other things, the
> court may believe that the merits question is easier, and the court may
> think that the parties and the public are more likely to be satisfied
> that justice has been done if the decision is based on the merits
> instead of what may be viewed as a legal technicality.

*Smith v. Texas*, 550 U. S. 297, 324 (2007) (Justice Alito, dissenting, joined by Chief Justice Roberts
and Justices Scalia and Thomas).

prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient performance prong, and may reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, *see Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (stating counsel is afforded reasonable selectivity in deciding which claims to raise without specter of being labeled ineffective), and an attorney is not required to raise every possible non-frivolous issue on appeal, *see Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

### 1. Ineffective assistance of counsel claims related to the alleged violation of Petitioner's Fourth Amendment rights

Ten of the instant 21 ineffective assistance of counsel Claims assert that trial and appellate counsel were ineffective for failing to argue that certain Fourth Amendment violations were committed with respect to the search warrants and their execution. These ten claims are listed below:

- In Claim Four (C), Petitioner asserts that trial counsel should have argued that his Fourth Amendment rights were violated when Detective Spillan improperly extended the scope of the warrant to include video files that were not listed or particularly described by the warrant language. (D.I. 1 at 10)

- Relatedly, Claim Four (D) alleges that appellate counsel should have raised the same Fourth Amendment argument on direct appeal.

29

- In Claim Eight (B), Petitioner alleges that trial counsel should have challenged the trial court's failure to analyze the alleged Fourth Amendment violations under the harmless error standard articulated in *Chapman v. California*, 386 U.S. 18 (1967). (D.I. 1 at 15; D.I. 16-43 at 25)

- Claim Eight (C) asserts that appellate counsel should have raised the *Chapman* argument on direct appeal.

- In Claim Twelve (C), Petitioner asserts that trial counsel provided ineffective assistance by failing to argue that his Fourth Amendment rights were violated when the police "invaded" extra buildings they knew or should have known were not covered by the warrant. (D.I. 1 at 19)

- Claim Twelve (D) alleges that appellate counsel provided ineffective assistance by failing to raise the same "Fourth Amendment/invasion of extra buildings" argument on direct appeal.

- Claims Thirteen (C) and (D) allege that trial and appellate counsel provided ineffective assistance by "spar[ring] with the prosecution debating 'white' vs 'checkerboard' building when neither should have been contemplated." (D.I. 1 at 20; *see also* D.I. 4 at 1, 4)

- Finally, Claims Fourteen (B) and (C) allege that trial and appellate counsel were ineffective for failing to argue that his Fourth Amendment rights were violated because the warrant was "rooted in staleness and *Franks'* violations" and also contained an affiant's misrepresentation of "hearsay witnesses." (D.I. 1 at 21)

It is well-settled that *Stone v. Powell's* restriction on federal habeas review of Fourth Amendment claims does not apply to "Sixth Amendment ineffective-assistance-of-counsel-claims which are founded primarily on incompetent representation with respect to a Fourth Amendment

30

issue." *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986). Nevertheless, none of Petitioner's instant Claims alleging that trial and appellate counsel provided ineffective assistance by failing to present certain Fourth Amendment challenges concerning the warrant and search entitle Petitioner to federal habeas relief, because they essentially restate the arguments litigated at his suppression hearing.

In July 2010, trial counsel filed a motion to suppress evidence seized from execution of the search warrant. Trial counsel presented two specific arguments to the Delaware Superior Court in support of the motion to suppress evidence: (1) the December 15, 2009 search warrant failed to allege probable cause to search the white outbuilding – for patient files at all, or for computerized patient files; and (2) the execution of the December 15, 2009 search warrant exceeded the scope of the warrant because the police searched all outbuildings, seized computers and electronic media "obviously unrelated" to patient or medical practice files, and opened deleted video files. (D.I. 16-27 at 55-78; D.I. 16-28 at 1-8) As a result, trial counsel urged the Superior Court to suppress all of the evidence seized as a result of the search of BayBees Pediatrics and of Petitioner's residence as fruit of the poisonous tree.

The suppression motion contained several paragraphs devoted to the topics of "Search of the Checkerboard Building was not authorized by the Warrant," "Inadequate Nexus between Patient Files and Computer Seized," and "The Warrant did not authorize the Opening of Deleted or Video Computer Files." (D.I. 16-27 at 59-63) In the motion and opening brief in support of the motion, trial counsel argued that the December 15, 2009 search warrant failed to allege probable cause to search the white outbuilding for patient files or for computerized patient files because: (a) there was nothing in the warrant indicating that patient files were located in the white outbuilding; (b) there was no justification in the four corners of the warrant to justify a search for computerized patient

31

files; and (c) there was no justification in the four corners of the warrant supporting the belief that evidence would be found in the patient files of any of the eight children identified in the warrant. (D.I. 16-10 at 5; D.I. 16-30 at 33; D.I. 16-31 at 25) Trial counsel also argued that Building C was the "white outbuilding" mentioned in the affidavit, not Building B, as Detective Elliott testified. (D.I. 16-31 at 14 ("Common sense requires us to conclude that the only obviously white outbuilding on the premises is Building 'C', which was in fact the only obviously white outbuilding there.")) Trial counsel contended that the execution of the warrant exceeded the scope of the warrant because the police searched all outbuildings, seized computers and electronic media "obviously unrelated" to patient or medical practice files, and opened deleted video files. (D.I. 16-31 at 13-23)

In addition, trial counsel "specifically and emphatically" challenged Detective Spillan's manner of conducting his search, including his "unguided, discretionless search of the digital items seized pursuant to the December 15, 2009 search warrant." (D.I. 16-31 at 22-23; D.I. 16-75 at 3-4; D.I. 16-79 at 3; D.I. 16-81 at 2) Trial counsel argued, *inter alia*, that: (1) the police were looking for items not even "remotely resembling medical files" as was described in the warrant; (2) Detective Spillan did not know the names of the eight patients whose files they were supposedly searching for; (3) the affidavit failed to state how the patient files were related to the crimes that the police were investigating; (4) the police officers' decision to seize the computer mediums and to have the police lab search for patient files was improper; and (5) the police exceeded the authority given under the warrant when Detective Spillan conducted his search of the seized files back at the police's lab. (D.I. 16-31 at 19-20)

The underlying Fourth Amendment issues in the instant ten ineffective assistance of counsel Claims were fully briefed[9] and, after a two-day evidentiary hearing,[10] the Superior Court issued a lengthy written opinion denying the motion to suppress and rejecting Petitioner's challenges to the search warrant and how the search was performed. *See Bradley*, 2011 WL 1459177, at *3-16. The Delaware Supreme Court affirmed the Superior Court's decision, concluding that the affidavit of probable cause alleged sufficient facts to support the December 15, 2009 search warrant and that the actions of the police officers in executing the search warrant were reasonable and within the bounds of the warrant issued. *See Bradley*, 51 A.3d at 431-36.

Considering that the issues regarding the search, including the conduct of the police in conducting the searches, were fully litigated, Petitioner has not overcome the presumption that trial counsel's representation at the motion to suppress stage was professionally reasonable. Petitioner also cannot demonstrate prejudice. As found by both the Delaware Superior Court when denying Petitioner's motion to suppress[11] and the Delaware Supreme Court' when affirming that decision,[12] the warrant application alleged sufficient facts to allow a neutral magistrate to find probable cause to search Building B, and the police did not exceed the scope of the warrant. Additionally, since the Delaware state courts concluded that the police search and seizure of evidence did not violate Petitioner's Fourth Amendment rights, trial and appellate counsel did not provide ineffective

---

[9] *See* D.I. 16-27 at 55; D.I. 16-28 at 8; D.I. 16-30 at 33; D.I. 16-31 at 25; D.I. 16-33 at 3-39.

[10] *See* D.I. 16-48 at 33; D.I. 16-50 at 7.
[11] *See Bradley*, 2011 WL 1459177, at *8.

[12] *See Bradley*, 51 A.3d at 431-33.

assistance by failing to argue that the state courts should have reviewed a non-existent constitutional violation under *Chapman*'s harmless error standard.[13]

Thus, Petitioner has failed to demonstrate that trial and appellate counsel provided ineffective assistance with respect to the alleged violations of Petitioner's Fourth Amendment rights. Accordingly, Claims Four (C) and (D), Eight (B) and (C), Twelve (C) and (D), Thirteen (C) and (D), and Fourteen (B) and (C) lack merit.

### 2. Claims Five (B) and (C)

In Claim Five (B), Petitioner contends that trial counsel provided ineffective assistance by failing to argue that the police violated his Fifth Amendment rights when they "broadened their search to a private computer found in a private location when the warrant targeted only a business computer to be found in a business location." (D.I. 1 at 12) Relatedly, Claim Five (C) asserts that appellate counsel provided ineffective assistance by failing the present the same Fifth Amendment argument on direct appeal. According to Petitioner, the "use" of the private location was constitutionally protected information and the "file titled 'September 30, 2009' found on a private computer outside of the business would reasonably be considered a 'diary' entry . . . and searching for scheduling as testimonial or communicative of [Petitioner's] 'state of mind' entered 5th Amendment protected territory." *Id.*

The Fifth Amendment protects every person against compulsory self-incrimination from searches or seizures made in violation of one's Fourth Amendment rights. *See Agnello v. United States*, 269 U.S. 20, 34 (1925). However, the introduction of evidence from a valid search warrant does not

---

[13] *See United States v. Molt*, 615 F.2d 141, 145 (3d Cir. 1980) (citing *Chapman* and explaining that when Fourth Amendment violation has occurred, "a court must determine whether the constitutional error was harmless beyond a reasonable doubt").

34

violate a defendant's constitutional rights. *See Stone*, 428 U.S. at 486; *Andresen v. Maryland*, 477 U.S. 463 (1976). As previously explained, Petitioner's trial counsel fully litigated the Fourth Amendment issues surrounding the search warrants and their execution, including the manner in which the police conducted the search. The Delaware state courts denied all of Petitioner's Fourth Amendment claims, finding that the search warrant was valid and the police did not exceed the scope of the warrant. *See Bradley*, 2011 WL 1459177, at *1-17, *aff'd*, 51 A.3d 423. Because the introduction of evidence obtained from valid search warrants did not violate Petitioner's constitutional rights, trial and appellate counsel's failure to assert a meritless Fifth Amendment violation did not constitute ineffective assistance. Thus, Claims Five (B) and (C) are meritless.

### 3.  Claims Six (B) and (C)

In Claims Six (B) and (C), Petitioner contends that his trial and appellate counsel were ineffective for not "assuring" his constitutional right to a jury trial. (D.I. 1 at 13) According to Petitioner, he was not properly deemed mentally competent to waive his right to trial by jury, and his trial counsel gave him inadequate advice regarding the waiver. (*Id.*) Petitioner argues that trial counsel requested that he "forego a trial by jury to spare alleged victims from testimony and not for strategic benefit," and that he "hesitated to disappoint and perhaps alienate the counsel on whom he depended for appeal." (*Id.*)

A review of the record demonstrates that trial counsel made a reasonable strategic decision to advise Petitioner to waive his right to a jury trial. According to trial counsel's Rule 61 affidavit, trial counsel advised Petitioner against a jury trial because counsel believed a jury trial would have conveyed no benefit to Petitioner. (D.I. 16-50 at 51) Trial counsel avers that "the prosecution's evidence left no room for reasonable doubt to be argued in [Petitioner's] favor," and a protracted jury trial would have resulted in the worst possible publicity for [Petitioner]." (D.I. 16-50 at 51)

35

Trial counsel explains that "the defense team sought as much as possible to draw the attention of the press, the public, and the court system away from the heinousness of [Petitioner's] crimes, and focus them on the questionable conduct of the police in the initial search of [Petitioner's] office." (D.I. 16-50 at 51)  Trial counsel also explains that "[c]ounsel sought to curry the favor of the Trial Judge as well as the Delaware Justices by litigating the only issue reasonably susceptible to challenge [*i.e.*, the motion to suppress], [as] [a] strategy focusing upon the guilt or innocence of [Petitioner] would have been absurd." (D.I. 16-50 at 51)[14] According to the Rule 61 affidavit, Petitioner "knew of all of these considerations from discussions with counsel and agreed with the strategy taken." (D.I. 16-50 at 51)

The Supreme Court has emphasized that a criminal defendant's Sixth Amendment right to a trial by jury may only be relinquished by a knowing, voluntary, and intelligent waiver. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 236-37 (1973); *see also Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 851 (3d Cir. 2017).  Significantly, the inquiry into the voluntariness of the waiver of a constitutionally guaranteed right, including the right to a jury trial, has two distinct elements. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also Attica v. Frank*, 2001 WL 827455, at *9 (E.D. Pa. July 11, 2001).

> First, the waiver of the right must have been knowing and voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. *Id.*  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to waive it.

*Moran*, 475 U.S. at 421.  In *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), the Supreme Court explained that the determination as to whether there has been a knowing and intelligent waiver of a

---

[14] As the State correctly points out, "Bradley makes no credible claim of actual innocence" and could not "credibly claim his innocence given that he videotaped the criminal acts for which he was ultimately convicted." (D.I. 18 at 18-19 & n.44)

constitutional right depends upon the facts and circumstances of each particular case, including the background, experience, and conduct of the accused. *See also Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 278 (1942); *Bess v. Giroux*, 2017 WL 4957867, at *6 (E.D. Pa. Oct. 31, 2017). Notably, although an on-the-record colloquy "can be helpful to assure that a criminal defendant is properly advised of his right to be tried by jury," "no such colloquy is required . . . under constitutional law." *United States v. Lilly*, 536 F.3d 190, 197 (3d Cir. 2008).

In this case, the Superior Court conducted a full hearing on May 9, 2011 regarding Petitioner's waiver of a jury trial and his decision to proceed to a bench trial. (D.I. 16-2 at 4) During this hearing, Petitioner told the Superior Court that he wanted to have a bench trial, he had a sufficient opportunity to fully discuss the matter with his counsel, he understood his right to a jury trial, and he did not have any questions or concerns to raise at that time. (D.I. 16-50 at 10-11) The Superior Court conducted a thorough colloquy with Petitioner, and then addressed the issue of Petitioner's outstanding mental evaluation, stating: "There is, I understand that there is no longer an effort being pursued in regards to the guilty but mentally ill defense. Since the abandonment of that potential defense has now occurred, there is no need for the examination as previously ordered." (D.I. 16-50 at 13-14)

This record reveals that: (1) the Superior Court, trial counsel, and Petitioner had previously discussed Petitioner's decision to waive a jury trial; (2) Petitioner relinquished the right voluntarily; (3) Petitioner understood the right he was abandoning and the consequences of the waiver; and (4) Petitioner's trial counsel, the State, and the Superior Court had no reason to believe that Petitioner was not competent. Notably, Petitioner does not offer anything from the record to support his claim that he was incompetent to waive his rights.

An attorney does not perform deficiently by failing to raise meritless arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Since the record demonstrates that Petitioner's waiver of his right to a jury trial was knowing and voluntary, Petitioner has failed to satisfy the performance prong of *Strickland*. In fact, the record demonstrates that trial counsel's decision to advise Petitioner to waive his right to a jury trial was both strategic and reasonable.

Petitioner also fails to establish any prejudice under *Strickland*, because he has not demonstrated a reasonable probability that the result of a jury trial would have differed from the result of his bench trial. As trial counsel recognizes in the Rule 61 affidavit, there were advantages to having this case tried by a judge rather than a jury, for reasons including that Petitioner had videotaped himself committing the charged crimes. (D.I. 16-50 at 51) Given the incontrovertible nature of the State's evidence of Petitioner's guilt, trial counsel concluded that a jury trial would have conveyed no benefit to Petitioner because the State's evidence left no room for reasonable doubt to be argued in Petitioner's favor. (D.I. 16-50 at 51)

For the reasons set forth above, the Court concludes that neither trial nor appellate counsel provided ineffective assistance by not "assuring" Petitioner's right to a jury trial. Accordingly, Claims Six (B) and (C) lack merit.

### 4.   Claims Seven (B) and (C)

Claims Seven (B) and (C) assert that Petitioner's trial and appellate counsel were ineffective by not raising a claim of judicial bias. (D.I. 1 at 14) Petitioner alleges that an objective appearance of partiality existed with regard to the trial judge and that pervasive bias was exhibited at trial. (*Id.*) Petitioner also asserts that multiple judges recused themselves, and "[a]n alleged victim's grandfather was a prominent member of the State judiciary (in charge of Chancery Court) who upon information and belief was a law school classmate of both the trial judge and first chair defense

attorney." (*Id.*) According to Petitioner, "[a] 'pre-disposition' unfavorable to [him] existed, and 'pervasive bias' was exhibited." (*Id.*) Petitioner concludes that "deep seated favoritism was evident when 'facts' were . . . judicially created." (*Id.*)

The Due Process Clause requires a "fair trial in a fair tribunal, before a judge with no actual bias against the defendant and no interest in the outcome of a particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *see also DeAngelo v. Johnson*, 2014 WL 4079357, at *13 (D. Del. Aug. 15, 2014). Significantly, there is a presumption that judges as public officials properly discharge their official duties, and a habeas petitioner must rebut this presumption by showing actual bias. *See Bracy*, 520 U.S. at 909; *see also Dejohn v. Pierce*, 2015 WL 4730909, at *7 *(D. Del. Aug. 10, 2015). A petitioner demonstrates actual bias by showing that he was treated "unfairly" by the trial judge, and "there must be an extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness." *Marshall v. Hendricks*, 103 F. Supp. 2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 307 F.3d 36 (3d Cir. 2002). A judge's adverse rulings to the defense on various motions or objections do not prove that a judge is biased or prejudiced, regardless of the correctness of the decisions. *See United States v. Gallagher*, 576 F.2d 1028, 1039 (3d Cir.1978); *see also DeAngelo*, 2015 WL 4079357, at *13.

Nevertheless, there are some instances in which a judge's implied bias creates such a high probability of actual bias that it violates the Constitution. *See Withrow v. Larkin*, 421 U.S. 35, 46 (1975); *Dejohn*, 2015 WL 4730909, at *7. "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Withrow*, 421 U.S. at 47. In addition, implied judicial bias may be found if the judge had significant prosecutorial and adjudicatory functions in the same case. *See In re Murchison*, 349 U.S. 133, 134-36 (1955). Finally, the Supreme Court has indicated that the

39

proper "generalized" inquiry into implied judicial bias is "whether sitting on the case . . . would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear, and true." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009).

Here, Petitioner's conclusory and unsupported allegations fail to demonstrate judicial bias. For instance, Petitioner incorrectly asserts that the Superior Court's factual finding that Petitioner "was known to videotape his patients" demonstrates the judge's partiality.  In fact, the Superior Court decision denying Petitioner's motion to suppress, which Petitioner references, actually stated: "[T]he affidavit set forth information received from other physicians and office staff that it was not uncommon for Dr. Bradley to videotape or photograph his patients." *Bradley*, 2011 WL 1459177, at *12.  Nothing about the Superior Court's summary description of statements provided by other physicians and staff demonstrates that the trial judge harbored any personal or implied bias against Petitioner, or that the trial judge abused his discretion by declining to recuse himself.

Petitioner's additional attempts to demonstrate that the trial judge was biased or that there was any appearance of impropriety or partiality are similarly unavailing.  The fact that other judges may have recused themselves from presiding over Petitioner's case or that an alleged victim's grandfather may have been a prominent member of the Delaware judiciary do not demonstrate actual bias rebutting the presumption that the presiding judge properly discharged his official duties. The effect, if any, of these background facts is purely speculative; none of it constitutes evidence of judicial bias.

Having concluded that Petitioner's assertion of judicial bias is conclusory and unsupported, the Court further concludes that trial and appellate counsel did not provide ineffective assistance by failing to raise a meritless judicial bias argument.  Therefore, Claims Seven (B) and (C) are meritless.

### 5.  Claim Nine (B)

In Claim Nine (B), Petitioner contends that trial counsel provided ineffective assistance by failing to contend that Petitioner's speedy trial rights were violated. (D.I. 1 at 16)  Petitioner argues that trial counsel were "complicit in the unreasonable delay" because they sought several continuances due to their representation of another defendant in a capital murder case. (D.I. 1 at 16; D.I. 20 at 111)

The Sixth Amendment guarantees a defendant's right to a speedy trial.  Courts must consider four factors when determining if a defendant's speedy trial rights have been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The Supreme Court has explained that "[t]he length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.*  As a general rule, delays of one year or more may trigger the analysis of the other *Barker* factors. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

In this case, Petitioner was arrested in December 2009, and his trial began about a year and a half later, in June 2011.  Although the delay of more than one year triggers the *Barker* analysis, consideration of the pertinent factors leads the Court to conclude that Petitioner's right to a speedy trial was not violated.

First, the State should not be held responsible for the delay because the continuances were requested by defense counsel.  Second, the record reveals that neither Petitioner nor trial counsel moved for a speedy trial (D.I. 16-50 at 51-52), and Petitioner does not allege that he asked his counsel to file a speedy trial request.  Finally, Petitioner has not alleged or demonstrated that his

41

ability to present his defense was impaired in any way due to the delay, or that he suffered any other prejudice from the delay of trial.

Since Petitioner's allegations fail under *Barker*, Petitioner cannot demonstrate that trial counsel's performance was deficient or that he suffered prejudice as a result of trial counsel's failure to raise a speedy trial claim.  Thus, Claim Nine (B) is meritless.

### 6.   Claims Ten (C) and (D)

In Claims Ten (C) and (D), Petitioner asserts that trial and appellate counsel were ineffective by demonstrating "complacency" in response to an "unreasonable number of judicial abuses of discretion" and "extreme irregularities in the proceedings."  (D.I. 1 at 17)  More specifically, Petitioner contends that trial counsel were complacent when the Superior Court abused its discretion by usurping the magistrate's role by (a) "vouching for Building B based upon [evidence] outside the four corners [by relying on] testimony of a detective's 'manner of observation;'" (b) "supplying retrospectively pure conjecture for required nexi;" (c) "disregarding the facts supporting Building C, a building truly a white outbuilding behind the main office;" (d) supplying a "key fact" from outside the evidence that Bradley was known to "videotape patients;" (e) "relying upon purely hearsay Witness 6 statements against Supreme Court of U.S. standards in Illinois v. Gates;" and (f) "neglecting the federal law requirement [of *Groh v. Ramirez* and *Doe v. Groody*] that no outbuilding at all should have been supported."  (D.I. 1 at 17)  Petitioner also argues that trial counsel were complacent when the Superior Court "usurp[ed] . . . the prosecutor's role [by] supplying arguments to rescue prosecutor's failed attempts."  *Id.*

#### (a) Superior Court's reliance on "Detective's manner of observation"

During the hearing on Petitioner's suppression motion, Detective Elliott testified that he drove by the BayBees Pediatrics property and saw the main building and a white outbuilding

42

(Building B).  (D.I. 16-48 at 48-49)  Petitioner contends that trial counsel were ineffective because

they did not object to the Superior Court's failure to limit its consideration of Petitioner's

suppression motion to the four corners of the warrant application and also because they failed to

object to the Superior Court's improper reliance upon Detective Elliott's testimony regarding how

he drafted the search warrant application.  Contrary to Petitioner's assertion, however, there was no

basis for trial counsel to object.  As the Delaware Supreme Court explained in Petitioner's first Rule

61 appeal, a

> motion to suppress was [Petitioner's] only viable defense.  In the
> Motion to Suppress, [Petitioner's] trial counsel challenged not only
> the search warrant, but also the manner in which the police
> conducted the search.  According to the affidavits submitted in the
> postconviction proceedings, [Petitioner's] trial counsel determined
> that testimony outside the four corners of the search warrant was
> necessary for challenging how the police conducted the search.

*Bradley*, 135 A.3d at760.  Since the evidence regarding the search itself was relevant and admissible at

the suppression hearing, the Superior Court did not abuse its discretion in considering Detective

Elliott's testimony regarding how he drafted the search warrant application.  Consequently, trial and

appellate counsel did not perform deficiently by failing to object to the Superior Court's proper

consideration of Detective Elliott's admissible testimony.

　　In turn, Petitioner cannot demonstrate any prejudice from trial and appellate counsel's

failure to object to the Superior Court's reliance on Detective Elliott's admissible testimony.

Notably, the Superior Court found that the search warrant application alleged sufficient facts to

allow a neutral magistrate to find probable cause to search Building B even without Detective

Elliott's testimony:

> [T]he Court must determine whether based on the information
> provided in the warrant and affidavit it would be clear to the issuing
> judge that an additional outbuilding was included within the property
> that would be searched.  While not listed in the correct portion of the

> warrant, the white outbuilding is referenced in the portion of the
> warrant used to identify the owner of the premises to be searched.

*Bradley*, 2011 WL 1459177, at *5. Detective Elliott's affidavit also stated: "The office also has an

outbuilding, which affiant [h]as learned is utilized by Dr. Bradley. Dr. Bradley takes his patients into

the outbuilding as well as the basement of the office." (D.I. 16-24 at 46-59)

For all of these reasons, Petitioner's contention that trial and appellate counsel were

ineffective for not objecting to the Superior Court's consideration of Detective Elliott's testimony

lacks merit.

### (b) Retrospective conjecture as nexi

Petitioner's contention that that trial counsel should have objected to the Delaware Superior

Court's "supplying retrospectively pure conjecture for required nexi" also lacks merit. Trial counsel

raised this issue in their briefing on the motion to suppress, arguing that the search warrant was

defective because "[t]here was no justification in the warrant to believe that patient files of any kind

were located in a white outbuilding on the property." (D.I. 16-31 at 1-8) The Delaware state courts

rejected trial counsel's argument, specifically finding that the warrant application alleged sufficient

facts to allow the issuing magistrate to find a reasonable basis to believe that a "white outbuilding,"

now known as Building B, might hold patient medical files related to the treatment of Petitioner's

patients. *See Bradley*, 51 A.3d at 432. According to the Delaware Supreme Court:

> [Petitioner] contends that [the] affidavit failed to provide a sufficient
> basis to conclude that [Petitioner] kept his patient files in the "white
> outbuilding" referenced in the search warrant. But, the affidavit
> clearly stated that [Petitioner] used a white outbuilding on the
> premises, and that on at least one occasion a father had seen
> [Petitioner] carry a patient to the outbuilding. The affidavit described
> other witnesses and complainants having stated that [Petitioner]
> carried his patients around the office during their medical
> appointments. The father's statement provided a reasonable basis to
> infer that [Petitioner] carried patients to the outbuilding for medical
> examinations. Given this use and the proximity of the outbuildings

> to the main practice room, it also was reasonable to infer that [Petitioner] used the space for medical examinations or office work.

*Bradley*, 51 A.3d at 432.  The Delaware Supreme Court agreed with the Superior Court's finding that the warrant application provided a sufficient nexus for a search of Building B:

> The Court which issued the warrant was required to assume that the doctor would have had a legitimate medical reason for taking the child to that location.  And it also follows that if a patient is taken to an outbuilding to perform a medical procedure, there may be records of what occurred at that location.   In other words, until they discovered otherwise, the fair assumption would be that there was a medically based rationale for the actions of [Petitioner].  It therefore follows that there is a reasonable basis to find that outbuilding B may hold medical files that would be related to the treatment of his patients and the warrant appropriately authorized the search for files at that location.

*Bradley*, 51 A.3d at 432.

The Delaware Supreme Court concluded that the affidavit of probable cause supported a reasonable inference that patient files, whether documentary or photographic, could be found in the outbuilding, along with other evidence of patient treatment.  *See Bradley*, 51 A.3d at 432.  The Delaware Supreme Court further held that this evidence was directly relevant to the patient complaints of sexual abuse described in the affidavit.[15]  *See id.*

---

[15]According to the Delaware Supreme Court:

> The affidavit is replete with information that the complainants received vaginal examinations during routine medical visits.   It is common sense to infer that a patient's medical file would be relevant in determining whether the vaginal examinations were part of an appropriate course of treatment, or whether instead they were a guise for improper sexual contact.   Patient medical files also could corroborate or contradict the timeline provided by the complainants.  As the Superior Court reasoned, "[t]he patient's file would demonstrate (a) whether the child was at the doctor's office in the time frame suggested, (b) what was the reason for the visit and (c) whether there was documentation in the file to support a medically

45

The record supports the Delaware state courts' determination of the facts. Consequently, the Court concludes that trial and appellate counsel did not provide ineffective assistance by failing to raise a meritless objection to the Superior Court's conclusion that the information provided in the four corners of the affidavit and the reasonable inferences to be drawn therefrom supported a search of patient files for information relating to the alleged crimes.

### (c) Disregarding the facts supporting Building C

Petitioner contends that trial counsel was ineffective for failing to object to the Superior Court's disregard of the facts supporting Building C as being the "white outbuilding," and that appellate counsel should have raised the objection on direct appeal. The record reveals that trial counsel asserted the following argument in their briefing on the motion to suppress: "[c]ommon sense requires us to conclude that the only obviously white outbuilding on the premises is Building 'C', which was in fact the only obviously white outbuilding there." (D.I. 16-31 at 14) The fact that the Superior Court rejected trial counsel's argument does not demonstrate that they provided ineffective assistance. During Petitioner's suppression hearing, Detective Elliott testified that Building B was the outbuilding described in the warrant. The Superior Court rejected Petitioner's argument, finding as fact that the police officers reasonably concluded that Building B was the white outbuilding referred to in the warrant, and that Building B was the actual outbuilding that Detective Elliott had attempted to describe in the warrant. *See Bradley*, 2011 WL 1459177, at *5. In turn, the

---

> appropriate reason for the conduct described by the child." The Superior Court properly concluded that the information provided in the four corners of the affidavit and the reasonable inferences to be drawn therefrom supported a search of patient files for information relating to the alleged crimes.

*Bradley*, 51 A.3d at 432.

46

Delaware Supreme Court found that the Superior Court's findings were supported by the record and were not clearly erroneous. *See Bradley*, 51 A.3d at 434. Given this record, the Court concludes that trial counsel were not ineffective in presenting their argument concerning Building C. In turn, appellate counsel were not ineffective for failing to re-assert a meritless argument.

### (d) Outside knowledge that Petitioner videotaped patients

Petitioner asserts that trial counsel should have objected when the Superior Court "created a key fact from outside of evidence, untrue in reality – that '[Petitioner] was known to videotape his patients.'" The record demonstrates that trial counsel's failure to object did not amount to deficient performance and did not prejudice Petitioner. The affidavit of probable cause attached to the search warrant application provided a basis to believe that Petitioner had taken photographs and videotaped his patients.[16] *See Bradley*, 2011 WL 1459177, at *10; *see also* D.I. 16-7 at 32-34. The affidavit set forth information from other physicians and office staff indicating that it was not uncommon for Petitioner to photograph or videotape his patients. (D.I. 16-7 at 32-37) The affidavit also recited that Petitioner installed surveillance cameras throughout his office, which he could observe from home, and that he took images of patients which he manipulated on his home computer. Finally, Detective Spillan was also aware that video cameras had been collected from the medical examination rooms in Building A, supporting a reasonable inference that Petitioner filmed patients during medical examinations. (D.I. 16-11 at 27)

---

[16] Witness 2, referenced in the affidavit, was a fellow doctor who had previously worked with Petitioner in the practice. Witness 2 informed police that Petitioner "likes to take digital pictures of his patients in the office. . . . [Petitioner] also likes to manipulate the pictures on the computer, like putting a patient's head on '[E]lmo.'" (D.I. 16-7 at 32; *see also* D.I. 16-10 at 6) Witness 6, a former employee of Petitioner's, informed Detective Elliott that Petitioner had cameras throughout his office that he could access from his home computer. (D.I. 16-7 at 33; D.I. 16-10 at 4, 25)

This record supports the finding that Petitioner was known to videotape his patients. Therefore, trial and appellate counsel were not ineffective for failing to raise a meritless objection to the finding.

### (e) Hearsay of Witness 6

Petitioner also alleges that trial counsel was ineffective for being complacent when the Superior Court relied upon Witness 6's "purely hearsay" statements to Detective Elliott that Petitioner had cameras throughout his office that he could access from his home computer. The record demonstrates otherwise.

Since Witness 6's statements were included within the four corners of the search warrant, the Superior Court did not abuse its discretion in considering these statements. *See State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013) ("The Fourth Amendment of the U.S. Constitution requires that a search warrant be issued only upon a finding of probable cause, which must be premised on the information within the four-corners of the affidavit in support of a search warrant. The magistrate issuing the warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit – including the veracity and the basis of knowledge of persons supplying hearsay information – there is a fair probability that contraband or evidence of a crime will be found in a particular place.").

It follows that neither trial counsel nor appellate counsel were ineffective for failing to raise this meritless argument.

### (f) Neglecting federal law

Petitioner asserts that trial counsel were ineffective for failing to argue that the search warrant did not support the search of any outbuilding. However, trial counsel did argue, vociferously, that the "white outbuilding" was Building C, not Building B (where the evidence used

at trial was found).   (D.I. 16-10 at 7-10, 12, 15, 24)  The Superior Court addressed whether the search warrant supported the search of any outbuilding, made a factual finding based on the warrant application and testimony at the suppression hearing that Building B was the white outbuilding, and determined that the warrant clearly authorized the search of both the doctor's office and a "white outbuilding." *See Bradley*, 2011 WL 1459177, at *5.  Once again, the fact that the Superior Court rejected trial counsel's argument does not demonstrate that counsel was ineffective.  In turn, appellate counsel were not ineffective for not re-asserting the previously-rejected argument.

Petitioner has failed to provide any factual support for his claim that trial and appellate counsel were complacent when the Superior Court "usurp[ed] . . . the prosecutor's role [by] supplying arguments to rescue prosecutor's failed attempts."  Petitioner's claims are conclusory, and he has not provided factual support for them.

For all of these reasons, the Court concludes that trial and appellate counsel did not provide ineffective assistance in the manner alleged in Claims Ten (C) and (D).

### 7.   Claims Eleven (B) and (C)

In Claim Eleven, Petitioner contends that he was constructively denied his right to counsel at critical stages of the trial process.  While not entirely clear, it appears that Petitioner alleges that the forfeiture of his assets deprived him of the ability to be represented by counsel of his choice.  Relatedly, Claims Eleven (B) and (C) appear to assert that trial and appellate counsel provided ineffective assistance by failing to "assure" his Sixth Amendment right to counsel and/or his right to counsel of his choice.

The Sixth Amendment provides that a criminal defendant has the right to the assistance of counsel for his or her defense.  A defendant has "the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the

defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). The right to choice of counsel, however, is not absolute. *See United Sates v. Gonzalez-Lopez*, 548 U.S. 140, 151-52 (2006). "[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159(1988). An erroneous deprivation of the right to choice of counsel constitutes a structural error requiring reversal of a criminal defendant's conviction. *See Gonzalez-Lopez*, 548 U.S. at 150.

In *United States v. Monsanto*, 491 U.S. 600, 616 (1989), the United States Supreme Court held that "the Government may – without offending the Fifth or Sixth Amendment – obtain forfeiture of property that a defendant might have wished to use to pay his attorney." The Sixth Amendment right to counsel of choice does not extend beyond a defendant's right to spend his own nonforfeitable assets. *See United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005). The Supreme Court has specifically held that the government may, pursuant to 21 U.S.C. § 853(e), seize assets before trial that a defendant intends to use to pay an attorney, so long as probable cause exists "to believe that the property will ultimately be proved forfeitable." *Monsanto*, 491 U.S. 615. "Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Caplin & Drysdale*, 491 U.S. at 630. In short, there is "a strong governmental interest in obtaining full recovery of all forfeitable assets." *Kaley v. United States*, 571 U.S. 320, 323 (2014).

In *Caplin & Drysdale*, 491 U.S. at 626, decided the same day as *Monsanto*, the United States Supreme Court held there is "'no Sixth Amendment right to spend another person's money' for legal fees – even if that is the only way to hire a preferred lawyer." *See also Kaley*, 571 U.S. at 326. Even pre-trial, when there is still a presumption of innocence, there is no constitutional prohibition

50

against freezing assets of an indicted defendant, as long as there is probable cause to believe the property will ultimately be proven forfeitable. *See Monsanto*, 491 U.S. at 615; *see also Kaley*, 571 U.S. at 327. "[I]f the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial." *Monsanto*, 491 U.S. at 616; *see also Kaley*, 571 U.S. at 327. In short, the probable cause standard governs the pre-trial seizure of forfeitable assets, even when may be needed to hire a lawyer. *See Kaley*, 571 U.S. at 333.

Here, following Petitioner's arrest, the Court of Common Pleas found at a preliminary hearing that his arrest was supported by probable cause. (D.I. 16-1 at 10) "It is well established that the purpose of a preliminary hearing is to determine whether Defendant can be held until the case is presented to the Grand Jury." *State v. Bailey*, 2004 WL 2914320, at *1 (Del. Super. Ct. Dec. 13, 2004). On January 20, 2010, the State filed a complaint under 11 Del. C. § 1505, alleging violations of the civil racketeering statute. (D.I. 16-27 at 12-18) The next day, the State filed a Racketeering Lien Notice. (D.I. 16-27 at 19-20) In February 2010, a Sussex County grand jury also found probable cause to charge Petitioner with more than 500 counts of first degree rape, second degree assault, sexual exploitation of a child, first and second degree unlawful sexual contact, and continuous sexual abuse of a child. (D.I. 16-4 at 1; D.I. 16-7 at 4)

The evidence of Petitioner's crimes was documented on digital media stored at his place of business and his home. The civil forfeiture complaint alleged that Petitioner used his property and business to procure victims for sexual exploitation. (D.I. 16-27 at 12-18) The complaint also alleged that Petitioner videotaped the unlawful sexual acts. (D.I. 16-27 at 12-18) The lien notice was based

on the civil racketeering complaint. (D.I. 16-27 at 19-20)  The complaint, in turn, relied on the criminal charges.

The United States Supreme Court has explained that there is no constitutional prohibition against the government seizing forfeitable assets pre-trial, even when those assets are needed to fund a legal defense to criminal charges. *See Kaley*, 571 U.S. at 333.  The Supreme Court has also held that an unindicted defendant is entitled to contest a finding of probable cause related to that seizure. While various routes have been taken for determining when or whether a hearing is required when assets are frozen, courts have uniformly found that a defendant must make some threshold showing before a motion for a *Monsanto* or *Monsanto*-like hearing will be granted.  *See, e.g., United States v. Bonventre*, 720 F.3d 126, 130-31 (2d Cir. 2013); *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998); *United States v. Farmer*, 274 F.3d 800, 804-05 (4ᵗʰ Cir. 2001); *United States v. Yusuf*, 199 Fed. App'x 127, 132 & n.4 (3d Cir. 2006) (approving *Jones* framework); *Jamieson*, 427 F.3d at 406 n.3 (describing approaches taken by different circuits).  In other words, a defendant must make some showing when requesting – and before obtaining – a hearing regarding the restraint of his or her assets.

In this case, Petitioner did not request a hearing; he did not ask the State to release any funds for his use in retaining counsel; and he did not challenge the complaint.  (D.I. 18 at 69)  Having failed to articulate any deprivation prior to or during trial, Petitioner's current complaint that his lack of funds prevented him from retaining the attorney of his choice lacks merit.[17]  In fact, Petitioner

---

[17] The State asserts that there is little probability that Petitioner would have prevailed even if he had requested a probable cause hearing.  (D.I. 18 at 68)  Since the evidence of many of his crimes was found in the form of visual depictions of sexual exploitation of young patients at his pediatric practice, there was no doubt that Petitioner's assets were used to commit both the criminal offenses and civil violations alleged in the indictment and civil complaint.  Moreover, the computer and video

ultimately consented to a default judgment as to the civil racketeering charges. *See Bradley*, 135 A.3d at 758-759.

Further, the record reflects that Petitioner's family, not Petitioner himself, initially retained counsel (whom Petitioner now claims was his chosen counsel) "so that they could make a determination as to whether they should fund a defense in the case." (D.I. 16-27 at 10-11)  Aside from the preliminary hearing, the only record evidence regarding Petitioner's original representation is the letter indicating that Petitioner's original counsel had insufficient funds for mental health examinations. (D.I. 16-27 at 10-11)  That letter indicates that counsel (and presumably Petitioner) knew that the lien had been filed.  Petitioner has offered no explanation for his failure to challenge the State's forfeiture proceeding and failing to in any manner request the return of his assets.

Finally, Petitioner's assertion that the Superior Court's finding that his family (and not Petitioner himself) had retained such private counsel, does not demonstrate that Petitioner was not represented by counsel.  Indeed, the record reflects that Petitioner was represented by counsel at all stages of the criminal proceedings against him, and Petitioner never asserted a right to choice of counsel in the proceedings leading to his conviction.

Based on the foregoing, the Court rejects Petitioner's contention that he was denied his Sixth Amendment right to counsel and/or his right to counsel of his choice.  Therefore, the Court concludes that trial and appellate counsel did not provide ineffective assistance by failing to assert that Petitioner was constructively denied Sixth Amendment right to counsel and/or his Sixth Amendment right counsel of his choice.

---

equipment used by Petitioner in exploiting the child victims had traveled in interstate commerce, as they were not exclusively manufactured in Delaware. *Id.*

**D. Errors Related to Rule 61 Proceedings**

Petitioner asserts the following four Claims concerning alleged errors that occurred in his

Rule 61 proceedings:

- In Claim Fifteen (A), Petitioner contends that postconviction counsel provided ineffective

assistance during his first Rule 61 proceeding by excluding from the amended Rule 61

motion several of the ineffective assistance of counsel claims Petitioner had included in his

original pro se Rule 61 motion.  (D.I. 1 at 22)  Relatedly, Petitioner asserts that

postconviction counsel erred by informing Petitioner that he could, in a second Rule 61

motion, raise claims alleging that post-conviction counsel was ineffective.  (D.I. 1 at 22)

- In Claim Fifteen (B), Petitioner contends that he was "constructively denied both

appointed and pro se [post-conviction] counsel" after his initial postconviction counsel

failed to render assistance regarding several issues of alleged merit.  (D.I. 1 at 22)  Relatedly,

Petitioner contends he was constructively denied representation when post-conviction

counsel "withdrew without notice and without replacement."  (D.I. 1 at 22)

- In Claim Fifteen (C), Petitioner contends he was denied the right to self-representation

when the Delaware Supreme Court "ignored' his motion requesting that Justice Strine

"either recuse or declare 'duty to sit'."  (D.I. 1 at 22)

- Finally, Claim Fifteen (D) asserts that that Petitioner's "constitutional rights to due process

and equal protection under the law in postconviction proceedings were violated when the

trial judge abused discretion and materially interfered in the process in an attempt to cause

prejudice."  (D.I. 1 at 22)

None of these Claims warrants relief.  Allegations of errors in state collateral proceedings are

not cognizable on federal habeas review, as "the federal role in reviewing an application for habeas

corpus is limited to evaluating what occurred in the state . . . proceeding that actually led to the petitioner's conviction." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("[W]hat occurred in the petitioner's *collateral* proceeding does not enter into the habeas calculation."). In addition, there is no constitutional right to assistance of counsel in collateral proceedings. *See* 28 U.S.C. § 2254(i) ("The effectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman*, 501 U.S. at 752 ("There is no constitutional right to an attorney in state post-conviction proceedings.").

Therefore, the Court will deny Claims Fifteen (A), (B), (C), and (D) because they fail to allege issues cognizable on federal habeas review.

## V.    PENDING MOTION

In August 2020, Petitioner filed a "Motion for the Court to Take Extraordinary Measures re: Covid 19 Emergency." (D.I. 23) Petitioner asserts that "Covid 19 is a national emergency" and, since is "elderly with diabetes and asthma," his incarceration "could constitute a constructive death sentence." (D.I. 23 at 1-2) Petitioner, however, does not appear to be seeking immediate or compassionate release. Rather, he asks the Court to "apprise" the Third Circuit "of the importance and gravity of his case" and also appears to ask for an expedited ruling in this case. (D.I. 23 at 1-2)

The record reveals that Petitioner subsequently filed a Writ of Mandamus in the Third Circuit, asserting that his "multiple issues of merit" "must be resolved in the interest of justice." (D.I. 24 at 1) Petitioner's Writ of Mandamus essentially apprises the Third Circuit of the "importance and gravity of his case." Additionally, upon entry of this Memorandum Opinion and Order, Petitioner will have obtained his ruling.

Therefore, the Court will dismiss the pending Motion as moot, because Petitioner has obtained the relief he appears to be requesting in that Motion.

## VI.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VII.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without an evidentiary hearing.  An appropriate Order will be entered.

56